IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FMC INTERNATIONAL A.G., and FMC TECHNOLOGIES, INC., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-04-3896 |
| ABB LUMMUS GLOBAL, INC. and BANK ONE, N.A., | § § § | |
| Defendants, | § § | |
| ABB LUMMUS GLOBAL, INC. and ABB LUMMUS GLOBAL, INC./GROOTINT B.V. JOINT VENTURE, | § § § | |
| Counter-Plaintiffs, | § § | |
| V. | § § | |
| FMC INTERNATIONAL A.G., | § § | |
| Counter-Defendant. | § | |

## MEMORANDUM AND ORDER

Pending is Defendant/Counter Plaintiff ABB Lummus Global, Inc.'s ("ABB") and Counter-Plaintiff ABB Lummus Global, Inc./Grootint B.V. Joint Venture's ("the JV") Motion to Dismiss RICO Claims (Document No. 108), in which ABB and the JV seek dismissal, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), of Plaintiffs' civil RICO claims. Having considered the motion, Plaintiffs' response in opposition (Document No. 110), ABB and the JV's Reply (Document No. 113), Plaintiffs' allegations in their Original Federal Complaint (Document No. 36) and their Statement of Facts (Document No. 48), and the applicable law, the Court Orders, for the reasons set forth

below, that ABB and the JV's Motion to Dismiss (Document No. 108) is GRANTED and Plaintiffs' RICO claims are DISMISSED.  In addition, for the reasons set forth below, the Court declines to exercise supplemental jurisdiction over the exclusively state law claims that remain in this case, and accordingly, this case will be REMANDED to the 133rd District Court of Harris County, Texas from where it was removed.

## I.      Background and Procedural History

This case arises out of Esso Exploration Angola Limited's (Esso) construction of a deepwater development off the coast of Angola.  Esso contracted with ABB Lummus Global, Inc./Grootint B.V. Joint Venture, a joint venture (referred to hereafter as "the JV") between ABB Lummus Global, Inc. (ABB) and Heerema Zwinjdrecht BV (Heerema) (formerly known as Grootint), to perform construction and fabrication.  The JV, in turn, contracted with FMC International A.G. to provide two manifolds.  Disputes later arose between the parties regarding FMC's fabrication of the manifolds and ABB and the JV's payment therefor.

On December 26, 2002, FMC International A.G. filed this action against ABB and Bank One N.A. in the 133rd Judicial District Court in Harris County, Texas, alleging state law causes of action of breach of contract and quantum meruit.  FMC Technologies, Inc. was subsequently added as a plaintiff (FMC International A.G. and FMC Technologies, Inc. will be referred to herein as "FMC"), the JV and Heerema were added as defendants, and additional state law causes of action were alleged, including, fraud/intentional misrepresentation/negligent misrepresentation, tortious interference, breach of a confidentiality agreement, and misappropriation of trade secrets and confidential information.  On October 4, 2004, at the beginning of a two month window when the

case could be called to trial, FMC was granted leave to file its tenth amended petition, in which FMC

alleged, for the first time, a cause of action for violations of the federal RICO statute, 18 U.S.C. §

1961, et seq.  The totality of FMC's allegations in support of its RICO claim were that:

> ABB Lummus entered into a joint venture with Heerema to carry out its
> responsibilities on the Kizomba A project with Esso.  ABB Lummus conducted the
> affairs of the Joint Venture through a pattern of racketeering activity that caused
> FMC financial injury, as well as irreparable harm to FMC's business reputation.
> These activities, at a minimum, include wrongfully withholding payments due to
> FMC, drawing on the letter of credit, and dissemination of FMC's confidential, trade
> secret, and proprietary information.  ABB's continuing activities are a violation of
> 18 U.S.C.A. § § 1961-1964.

FMC's Tenth Amended Petition at pp. 9-10.   Two days later, ABB, the JV and Heerema (subject

to the special appearance it had filed), removed the case to this Court.  Subsequent to the removal,

FMC filed an Original Federal Complaint (Document No. 36), and a Statement of Facts (Document

No. 48), elaborating therein on the RICO claim(s).[1]  FMC's RICO claim(s) is premised entirely on

an alleged violation of 18 U.S.C. § 1962(c).

    ABB and the JV seek dismissal of the RICO claim(s) on the basis that FMC has not stated

a claim under the federal RICO statute for which relief may be granted.  ABB and the JV argue in

their Motion to Dismiss that Plaintiffs have not alleged predicate acts of mail fraud, wire fraud, or

bank fraud with the particularity required by Fed. R. Civ. P. 9(b), have not alleged a "pattern of

racketeering", and have not alleged any damages attributable to racketeering activities.  In addition,

ABB and the JV argue, throughout their motion, that their contractual dispute with Plaintiffs is just

that – a contractual dispute – which does not give rise to a federal RICO claim.

---

[1] FMC's "Statement of Facts" was filed pursuant to the Order entered on June 16, 2005, which required FMC to provide more specific allegations in support of its RICO claim(s).  *See* Document No. 40.

## II.    Rule 12(b)(6) Standard of Review

Rule 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  Such dismissals, however, are rare, *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (1990), and only granted were "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957).

In determining whether a dismissal is warranted pursuant to Rule 12(b)(6), the Court accepts as true all allegations contained in the plaintiff's complaint. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Garguil v. Thompkins*, 704 F.2d 661, 663 (2nd Cir. 1983), *vacated on other grounds*, 104 S. Ct. 1263 (1984).  In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Id.*  From those allegations and inferences, the court determines whether the plaintiff has stated a claim under Fed. R. Civ. P. 8(a). 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (1990).  "To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." *Clark*, 794 F.2d at 970.  It is not enough that the plaintiff's allegations do not support the legal theory claimed.  Rather, the court is required to carefully examine the allegations to ascertain whether those allegations will support recovery under any legal theory. 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (1990).

## IV.    Civil RICO

A plaintiff in a civil action may recover damages under the RICO statute, 18 U.S.C. § 1961, et seq., if he is able to allege and prove: 1) a violation of 18 U.S.C. § 1962(a), (b), (c), or (d), and 2) injury to business or property as a result of such violation.[2]  18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ").  Section 1962, as interpreted by the Fifth Circuit Court of Appeals, provides in its simplest terms, that:

> (a)    a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;[3]

---

[2] The requirement that a RICO plaintiff plead and prove injury as a result of a violation of § 1962 is a standing requirement.  *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998) (To have standing to maintain a RICO claim, a plaintiff must be able to plead and prove both injury and causation); *Khurana v. Innovative Health Care Systems, Inc.*, 130 F.3d 143, 147 (5th Cir. 1997)(standing to sue under RICO requires allegations and proof of "(1) a violation of § 1962, (2) an injury to business or property, *and* (3) that his injury was proximately caused by the RICO violation")(emphasis in original, *cert. granted and judgment vacated on other grounds sub nom. Teel v. Khurana*, 119 S. Ct. 442 (1998).  If the plaintiff's injury is not proximately caused by the RICO defendant's substantive violations of § 1962, the plaintiff has no standing to sue under RICO.  *Price*, 138 F.3d at 607.

[3] 18 U.S.C. § 1962(a) provides specifically, in pertinent part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b)     a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity;[4]

(c)     a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity;[5] and

(d)     a person cannot conspire to violate subsections (a), (b), or (c).[6]

*Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).   All civil RICO claims require allegations and proof of "1) a *person* who engages in 2) a *pattern of racketeering activity* 3) [which is] connected to the acquisition, establishment, conduct or control of an *enterprise*."   *Id.* at 204 (emphasis in original).   Plaintiffs' RICO claim(s) are all premised on alleged violation(s) of § 1962(c).

**A.     RICO person**

A "person", within the meaning of § 1962, "includes any individual or entity capable of holding a legal or beneficial interest in property."   18 U.S.C. § 1961(3).   To be liable as a "RICO person" under § 1962, however, the defendant must be "one that either poses or has posed a

---

[4] 18 U.S.C. § 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

[5] 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

[6] 18 U.S.C. § 1962(d) provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

continuous threat of engaging in acts of racketeering." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988), *cert. denied*, 109 S. Ct. 1531 (1989).

### B.    Pattern of Racketeering

A "pattern of racketeering" within the meaning of § 1962 "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).  In this circuit, "a pattern of racketeering activity" has two elements: "1) predicate acts--the requisite racketeering activity, and 2) a pattern of such acts." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993).  Predicate acts are delineated in 18 U.S.C.    § 1961(1), and include, for purposes of this case, mail fraud, wire fraud, and bank fraud.  To set out a pattern of predicate acts, a plaintiff must demonstrate that the predicate acts are related and that such acts have some type of continuity.  *Id.*

### C.    RICO enterprise

An "enterprise" within the meaning of § 1962 "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  If the plaintiff is alleging an association-in-fact enterprise, there must be allegations and evidence demonstrating "'an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit.'" *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (quoting *United States v. Turkette*, 101 S. Ct. 2524, 2528 (1981)).  "The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages."  *Id.* at 229.

## V.      Discussion

FMC has not alleged, with the particularity required by Rules 9(b) and 12(b)(6), predicate acts of racketeering.  In addition, FMC has not alleged a pattern of predicate acts, which is required to sustain cause of action under RICO.

### A.      Predicate Acts

Predicate acts supporting a civil RICO claim, which are based on allegations of fraud, must meet the pleading requirements of FED. R. CIV. P. 9(b).  *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138-39 (5th Cir. 1992) (Rule 9(b)'s particularity requirement "applies to the pleading of fraud as a predicate act in a RICO claim"); *Heden v. Hill*, 937 F. Supp. 1230, 1243 (S.D. Tex. 1996) ("[A]llegations of mail fraud and wire fraud must be made with the particularity required by FED. R. CIV. P. 9(b)."); *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) ("Rule 9(b)'s particularity requirement applies to pleading fraud as a predicate act in a RICO claim").  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind may be averred generally."  FED. R. CIV. P. 9(b) particularity, at a minimum, requires a plaintiff to allege the time, place, and the contents of the representation upon which the fraud is based, as well as the identity of the person making the representation, and the objective of the fraud.  *Tel-Phonic*, 975 F.2d at 1139; *Bonton*, 889 F. Supp. at 1004.

In the civil RICO context, Rule 9(b) also requires the plaintiff to allege specifically how *each* act of mail or wire fraud furthered the fraudulent scheme, who caused what to be mailed or wired when, and how the mailing or wiring furthered the fraudulent scheme.  *Heden*, 937 F. Supp. at 1243; *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("Thus, 'loose references to

mailings and telephone calls' in furtherance of a purported scheme to defraud will not do.  Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications.")(citations omitted).  In addition, the allegations should "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Ind., Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987); *see also Marriott Brothers v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988) ("Rule 9(b) also requires that the plaintiffs plead with particularity the representations made by each defendant."), *aff'd*, 911 F.2d 1105 (5th Cir. 1990).  It is not enough for the plaintiff to attribute vaguely the alleged fraudulent activity to the "defendants" collectively.  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1993); *Jepson*, 34 F.3d at 1328-29 (It is improper to lump corporate defendants together "when it comes to attributing acts of mail and wire fraud. . . . [A]bsent a compelling reason, a plaintiff is normally not entitled to treat multiple corporate defendants as one entity.").  If predicate acts of fraud are not pled with the particularity required by Rule 9(b), civil RICO claims are subject to dismissal. *See e.g.*, *Ahmad v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997)(failure to plead predicate acts of fraud with particularity is enough to justify dismissal of a civil RICO claim), *cert. denied*, 118 S. Ct. 1165 (1998); *Jepson*, 34 F.3d at 1327-30 (dismissal of a civil RICO claim was proper when plaintiff failed to allege the predicate acts of mail and wire fraud with the required particularity).

FMC has not stated a federal RICO claim with the allegations in its Original Federal Complaint.  FMC's RICO claim, as alleged in FMC's Original Federal Complaint, is as follows:

> *The J.V. is a RICO enterprise.*
> FMC incorporates by reference all the factual information recited in this complaint and obtained in discovery or later obtained in discovery as if fully set forth.  In July 2001, ABB Lummus and Heerema formed the J.V. to carry out their responsibilities on the Kizomba A project.  ABB Lummus and Heerema are equal

partners in the J.V. sharing all profits of the J.V.  The J.V. is still in existence and is an enterprise pursuant to 18 U.S.C. §§ 1961-1964.  Both ABB Lummus and Heerema are "persons" within the meaning of 18 U.S.C. § 1962(c) who operated and manages or participated in the operation and management of the J.V. through a pattern of racketeering activity.  Additionally, upon information and belief, ABB Lummus and Heerema have created other entities similar to the J.V. to carry out predicate acts.  Likewise, ABB Lummus and Heerema have acted as RICO enterprises in order to carry out their schemes, such as the scheme to defraud its vendors and subcontractors.

*Defendants committed acts of racketeering.*

The defendants carried out a scheme specifically intended to defraud FMC, and used both the U.S. mail and wire in violation of 18 U.S.C. §§ 1341 and 1343 in furtherance of its nefarious scheme.  The defendants' fraudulent activities, as set forth herein, deprived FMC of not only millions of dollars but also its property interest in the manifolds.  FMC relied on the defendants' false promises to pay invoices from its contractors when due, continued to perform services, and shipped the manifolds to defendants.  The defendants' release of FMC's confidential and proprietary information amounted to an act of racketeering.  Additionally, FMC was the target and intended victim of the defendants' false statements to Bank One as set forth above.  The defendants' false statements to Bank One were in furtherance of its scheme to defraud FMC and were in violation of 18 U.S.C. § 1344.

*Defendants operated their business through a pattern of racketeering activities*

Listed herein are some of defendants' fraudulent activities.  However, investigation of defendants' activities is ongoing and, based on information and belief, additional activities will be uncovered.  Unquestionably, the defendants' fraudulent acts have (i) a same or similar purpose, (criminally converting the materials, services, and/or confidential information of vendors and subcontractors so as to increase defendants' profits), (ii) similar results (both GMF and Pride accepted less than full value for their work and the defendants intended to force FMC to accept the same result), and (iii) similar victims (the victims are the defendants' vendors and subcontractors, e.g., GMF, Pride, and FMC are either vendors or subcontractors of defendants).  In addition, the defendants used similar methods of at least fraud, coercion, and misappropriation to increase its income at the expense of its vendors and subcontractors including, at least GMF, Pride, and FMC.

All of the defendants' acts of racketeering set forth herein are continuous in that the defendants perpetrated the acts of racketeering over a substantial period of time (April 2002 to the present) or pose a threat of indefinite duration, in that the acts of racketeering have become the regular way the defendants conduct business unless halted by the Honorable Court.

*Defendants' activities effected both interstate and foreign commerce*

At the request of defendants, FMC's manifolds were constructed and tested in Louisiana and Texas before shipment to Holland where assembly was completed and the manifolds were integrated into the platform. Additional vendors who provided parts or services for the manifold were located in Edmonton, Canada (Master Flo chokes), Hemet, California (McCrometer Flowmeters), and Rotterdam, The Netherlands (Imtech labor). The defendants eventually shipped the manifolds to offshore Angola, Africa where they are operating today. Without question, the acts and omissions of the defendants affected both interstate and foreign commerce.

*Defendants' actions injured FMC's business and property*

The defendants have refused to pay FMC's invoices. The defendants' business practice is to promise payment on the invoice in full (while knowing and intending that they will never pay in full), delay payment, refuse payment, present a guarantee or letter of credit, and create a back charge for unnecessary items to reduce any amount owed to vendors and subcontractors. The defendants systematically use the threat of non-payment, presentment of letters of credit, and back charges as a means to coerce a lower price from its vendors and subcontractors. The defendants use their superior bargaining position to force its vendors and subcontractors to expend time and material and then refuse to pay some or all of the funds due to force the vendors or subcontractors to reduce their fees.

In short, the defendants initially agree to pay its vendors and subcontractors. The vendors and subcontractors rely upon this and perform their various services; however, the defendants never intend to pay its vendors or subcontractors in full, The defendants then force their vendors or subcontractors to accept less than full value for its goods and services.

*FMC was harmed "by reason of a violation of section 1962"*

The defendants' RICO violations directly resulted in harm to FMC. The defendants' mail and wire scheme to force FMC to accept a reduced amount for its product and services has resulted in a direct loss of at least $9.5 million, which the defendants have refused to pay FMC.

Plaintiffs' Original Federal Complaint (Document No. 36) at 19-22.

FMC has not alleged predicate acts of mail fraud or wire fraud with the particularity required

by Rule 9(b). While FMC alleges in its Original Federal Complaint that "agreements" were reached,

and "representations" were made, nowhere in Plaintiff's Original Federal Complaint are there

particularized allegations of what was mailed or wired, when such mailing or wiring occurred, or the

specific contents of such mailings or wirings.  In addition, while there are various references in the Complaint to "emails" and "conversations", and multiple assertions that certain emails evidence ABB and the JV's intent to defraud FMC, there are no particularized allegations as to the contents of the emails, and no allegations from which it could be determined that the "conversations" occurred over the wires.[7]  Similarly, there are no allegations regarding each Defendants' role in the fraud – FMC alleges only that "the defendants," collectively, engaged in such fraud.  FMC's allegations in its Original Federal Complaint relative to the RICO claim are sparse, conclusory, and fall well short of the pleading requirements for predicate acts of mail fraud and wire fraud under Rule 9(b).  FMC's allegations in its Statement of Facts, while more lengthy, are essentially the same as the allegations as those in FMC's Original Federal Complaint.  Such allegations also fail to meet the pleading requirements under Rule 9(b) for predicate acts of mail fraud and wire fraud.[8] [9]

---

[7] In their response to ABB's and the JV's Motion to Dismiss the RICO claim, Plaintiffs allege, for the first time, that certain statements or communications were made by ABB and the JV over the wires – "via wires", "via facsimilie", "via phone".  Plaintiffs' Response (Document No. 110) at 9, 16, 19, 21.  Such allegations, at this late stage in response to ABB and the JV's second Motion to Dismiss, which are not contained in Plaintiff's live pleading(s), will not be considered in determining whether Plaintiffs have stated predicate act of wire fraud under Rules 9(b) and 12(b)(6).  *See Harrell v. United States*, 13 F.3d 232, 236 ((7th Cir. 1993)*; Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996);; *Morgan Distributing Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

[8] There is one alleged misrepresentation alleged by FMC that may suffice to state a predicate of wire fraud under Rule 9(B).  FMC alleges in its Original Federal Complaint that:

> On August 29, 2002, Maldonado represented to Berg via e-mail that the defendants intended to issue Supplement 8.  However, in spite of these representations, in compliance with its plan to withhold all future payments to FMC in order to negotiate a reduced amount from FMC, on or around August 29, 2002, Dellinger put a "hold" on approving Supplement 8.  Dellinger, effectively carried out the fraudulent scheme of the managers of the J.V. which ensured that the defendants would never voluntarily pay FMC in spite of their representations to the contrary.

As for FMC's allegation that FMC engaged in bank fraud by virtue of its misrepresentations to Bank One that all conditions precedent to its drawing down on FMC's letter of credit had been met, such allegations also fail to meet Rule 9(b)'s pleading requirements.  A person commits bank fraud if he knowingly executes or attempts to execute "a scheme or artifice 1) to defraud a financial institution or 2) to obtain any property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations or promises.  The government must also show that the defendant 'placed the financial institution at risk of civil liability,' and that the bank was FDIC insured." *United States v. Odiodio*, 244 F.3d 398, 401 (5th Cir. 2001) (quoting

---

The same allegations are contained in FMC's Statement of Facts.  Assuming, without deciding, that this alleged misrepresentation, communicated by e-mail, is sufficient to state a violation of the wire fraud statute with the particularity required by Rule 9(b), that alleged misrepresentation is insufficient to overcome ABB and the JV's Motion to Dismiss.  FMC is required to allege predicate *acts* with the particularity required by Rule 9(b).

[9] FMC's non-particularized allegations of fraud in this case are all premised on ABB and the JV's failure to pay FMC all the sums FMC claims it is entitled to for fabrication of the manifolds under the parties' agreement and purchase order.  While FMC maintains throughout its Complaint and its Statement of Facts that ABB and the JV represented and promised that payment would be made, the circumstances regarding the alleged representations and promises convince the Court that FMC claims are nothing more than breach of contract claims.  *See Marriott Brothers*, 704 F. Supp. at 739 ("The [mail fraud] statute  does not, however, reach every business practice that fails to fulfill expectations or every breach of contract, or every breach of fiduciary duty.  Rather, there must have been a 'recognizable scheme formed with specific intent to defraud.'  In addition, the defendants must have made fraudulent representations or omissions reasonably calculated to deceive.") (citations omitted); *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 340 (Tex. Civ. App.--Corpus Christi 1979, no writ)("A promise to perform in the future, although made for the purpose of inducing another to enter a contract, will not amount to legal fraud, though at a later date, the promise, without any excuse is broken.  This is a plain and well established proposition of law; *otherwise, every breach of contract would amount to fraud.*"), *cited with approval and with emphasis in, Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345, 1350 n.4 (5th Cir. 1987); *Hilton Sea, Inc. v. DMR Yachts, Inc.*, 750 F. Supp. 35, 39 (D. Me. 1990) ("A failure to perform as promised does not, without more, constitute fraud.  If the opposite were true, every breach of contract would present a colorable claim for fraud and, perhaps, a RICO violation.").

*United States v. Sprick*, 233 F.3d 845, 852 (5th Cir. 2000)).  Here, FMC does not allege that ABB and

the JV defrauded a financial institution.  Instead, FMC alleges that ABB and the JV presented the

letter of credit for payment with false representations to a financial institution that they were not in

breach of the contract they had with FMC.  According to FMC, "the defendants' fraud, malice,

deception, and trickery in wrongfully presenting the LOC [letter of credit] . . . is a violation of U.S.C.

§ 1344(2) and a predicate act under RICO."  Statement of Facts (Document No. 48) at 8.$^{10}$  While

FMC has alleged that the misrepresentations by ABB and the JV were contained in a February 29,

2003 certification letter, and that such certification letter provided the basis for Bank One to honor

the letter of credit, FMC has not alleged that Bank One was defrauded – that is, that the alleged

misrepresentations by ABB and JV in the February 29, 2003, certification letter, affected or damaged

Bank One.  Because "[an] essential element of bank fraud is 'intent to deceive a bank in order to

obtain from it money or other property,'" and because the bank fraud statutes are designed to protect

banks, not bank customers such as FMC, *see Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir.

2004), FMC'S allegations do not state a claim for bank fraud under 18 U.S.C. § 1344.  In addition,

even if the circumstances surrounding the presentment by ABB and the JV of the letter of credit met

the pleading requirements for a predicate act of bank fraud, there is only one such act of bank fraud

asserted by FMC.  An allegation of one act of bank fraud is insufficient to meet RICO's pleading

requirements of predicate *acts*, much less a pattern of such acts.

---

$^{10}$ There are no allegations of bank fraud in FMC's Original Federal Complaint (Document
No. 36).

Finally, with respect to FMC's allegation that ABB and the JV misappropriated, misused and/or stole its trade secrets and confidential information, not only does such an allegation not constitute a predicate act for purposes of RICO liability, *see* 18 U.S.C. § 1961(1); *Toms v. Pizzo*, 4 F.Supp. 2d 178, 183 ("Unlawful termination, harassment, conversion, trade secret theft, slander, disparagement, and unjust enrichment are not predicate acts for purposes of showing a pattern of racketeering."), all of FMC's claims that were predicated on ABB and the JV's use or misuse of FMC's trade secrets and/or confidential documents were dismissed in an Order entered on July 22, 2005. *See* Document No. 58.

Because FMC has not alleged predicate acts of mail fraud, wire fraud, or bank fraud with the particularity required by Rules 9(b) and 12(b)(6), FMC's RICO claim(s) is subject to dismissal.

### B.    Pattern of Racketeering

Even if FMC had alleged predicate acts of mail fraud, wire fraud, or bank fraud with sufficient particularity to withstand dismissal, FMC has not sufficiently alleged a "pattern of racketeering".

To withstand dismissal, a RICO claim must contain specific facts showing that the predicate acts "are related *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 109 S. Ct. 2893, 2900 (1989) (emphasis in original); *see also World of Faith Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 1248 (1997). Predicate acts are sufficiently related if they have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *H.J., Inc.*, 109 S. Ct. at 2901 (quoting 18 U.S.C. § 3575(e)). Predicate acts pose a threat of continued criminal activity if

they are repeated over a closed period of time or if there is "'a specific threat of repetition extending indefinitely into the future'" or where it is shown that the predicate acts are part of the defendant's regular way of conducting business. *World of Faith*, 90 F.3d at 122 (quoting *H.J., Inc.*, 109 S. Ct. at 2903); *see also Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44-45 (1st Cir. 1991).

FMC alleges in its Original Federal Complaint and in its Statement of Facts that ABB and the JV defrauded it by promising to pay FMC for the work it performed on the manifolds and then failed and/or delayed making such payments.   FMC also alleges that ABB and the JV made such representations of payment in order to induce FMC to continue working on the manifolds, and that ABB and the JV never intended to pay FMC in full, and always intended to coerce FMC into accepting a lesser amount for the work FMC had performed.   FMC then alleges that ABB and the JV have done essentially the same thing to two of its other vendors/subcontractors – Pride International, Inc. ("Pride") and Gulf Marine Fabricators ("GMF").   FMC alleges that ABB and the JV represented to Pride that it would be paid for its work, that it "attempted to force Pride to accept a twenty percent reduction in the cost of Pride's goods and services", that it threatened Pride with "liquidated damages", that it "falsely claimed that Pride's work was not satisfactory", and that it took "unreasonable and fraudulent positions on change orders, payments, and liquidated damages." Original Federal Complaint (Document No. 36) at 9-10.  With respect to GMF, FMC alleges that ABB and the JV "agreed to pay a sum certain to GMF, the defendants requested certain changes, and then the defendants refused to pay for the changes," and that the "defendants' intent was to force a negotiated settlement with GMF whereby GMF would accept less than full value for its goods and services." *Id*. at 11.   These are the same general allegations contained in Plaintiffs' Statement of Facts with respect to ABB and the JV's actions vis-a-vis Pride and GMF.

16

Nowhere in the Original Federal Complaint or Plaintiffs' Statement of Facts are there any particulars or specifics regarding the alleged fraud committed by ABB and the JV against Pride and GMF.  FMC again makes vague reference to representations that were made by ABB and the JV to both Pride and GMF, but fails to provide any specifics regarding the representations or how such representations were made.  FMC has therefore failed to allege a pattern of racketeering.[11]

### C.    Distinctiveness of RICO persons and RICO enterprise

In addition to the fact that FMC has not alleged predicate acts of fraud with the particularity required by Rule 9(b), and has also not alleged a "pattern of racketeering", FMC's RICO claim fails on the pleadings because FMC has not alleged a RICO enterprise that is distinct from alleged RICO "persons".

To plead a cognizable claim under § 1962(c), a plaintiff must allege the existence of a enterprise which 1) is separate and apart from the racketeering activity in which it has been alleged to engage; 2) is distinct from the RICO defendants; 3) has an on-going organization, formal or informal, and that it "functions as a continuing unit over time through a hierarchical or consensual decision-making structure"; and 4) exists for purposes other than to engage in the predicate acts of racketeering.  *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).  Allegations regarding the existence of a RICO enterprise must be fact-specific; conclusory allegations are insufficient.  *Id.*;

---

[11] In their Response to ABB's and the JV's Motion to Dismiss the RICO claim, Plaintiffs assert, for the first time, that ABB and the JV's pattern of racketeering encompassed similar schemes to defraud Shaw Contractors and DSME.  Because such allegations regarding Shaw or DSME were not included in FMC's Original Federal Complaint or its Statement of Fact, they will not be considered herein for purposes of determining whether Plaintiffs have stated a pattern of racketeering.

17

*Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988); *Montesano v. Seafirst Commercial Corp.*,

818 F.2d 423, 427 (5th Cir. 1987).

> According to the Fifth Circuit:
>
> Section 1962(c) imposes liability on an employee or associate of an enterprise conducting affairs of the enterprise through a pattern of racketeering activity and, logically, such an individual cannot employ or associate with itself. . . . [accordingly] when the alleged association-in-fact entity is in reality no different from the association of individuals or entities that constitute a defendant "person" and carry out its activities, the distinctiveness requirement is not met in regard to that defendant.

*Khurana v. Innovative Health Care Systems, Inc.*, 130 F.3d 143, 154-155 (5th Cir. 1997)(citations

omitted), *cert. granted and judgment vacated on other grounds sub nom. Teel v. Khurana*, 119 S.

Ct. 442 (1998); *see also Cedric Kushner Promotions, Ltd. v. King*, 121 S. Ct. 2087, 2088 (2001) ("to

establish liability under § 1962(c) one must allege and prove the existence of two distinct entities:

(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different

name").

Here, FMC's own allegations defeat the distinctiveness requirement under § 1962(c). FMC

alleges in its Original Federal Complaint that ABB and Heerema are RICO persons, and that the JV,

which is a joint venture between ABB and Heerema, is a RICO enterprise. FMC then alleges that

ABB and Heerema "have acted as RICO enterprises". Because FMC's allegations demonstrate that

there is no distinction between the RICO persons and the purported RICO enterprise(s), FMC has

not stated a RICO viable claim under § 1962(c).

## VI.    Supplemental Jurisdiction

This case was properly removed from state court, where it had been pending for nearly two years, when FMC alleged, for the first time, a federal RICO claim.  Given that Plaintiffs have failed to state a federal RICO claim, that claim is dismissed.  Exclusively state law claims and issues remain.  This Court declines to exercise supplemental jurisdiction over the remaining state law claims, and remands those claims, and this case, to the 133rd District Court of Harris County, Texas.

## VII.    Conclusion and Order

Based on the foregoing and the conclusion that Plaintiffs have failed to state a RICO claim in accord with the requirements of Fed. R. Civ. P. 9(b), it is

ORDERED that Defendant/Counter Plaintiff ABB Lummus Global, Inc.'s ("ABB") and Counter-Plaintiff ABB Lummus Global, Inc./Grootint B.V. Joint Venture's ("the JV") Motion to Dismiss RICO Claims (Document No. 108) is GRANTED, and Plaintiffs' federal RICO claim(s) is DISMISSED.  It is further

ORDERED that all other pending motions are DENIED without PREJUDICE, and this case is REMANDED to the 133rd District Court of Harris County, Texas, from where it was removed.

SIGNED at Houston, Texas, on this 24th  day of  January, 2006.

Frances H. Stacy
United States Magistrate Judge

19